UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE CLOUDERA, INC. SECURITIES
LITIGATION

Case No. 19-CV-03221-LHK

**ORDER GRANTING MOTIONS TO
DISMISS CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT WITH
LEAVE TO AMEND**

This case is a putative securities class action against Cloudera, Inc ("Cloudera"), Intel
Corporation ("Intel"), and numerous director and corporate officer defendants. Lead Plaintiff
Mariusz J. Klin & The Mariusz J. Klin MD PA 401K Profit Sharing Plan and Named Plaintiffs
Robert Boguslawski and Arthur P. Hoffman (collectively, "Plaintiffs") bring this suit on behalf of
"all other persons similarly situated who purchased and/or otherwise acquired shares of Cloudera
common stock between April 28, 2017 and June 5, 2019, inclusive (the 'Class Period')."
Consolidated Amended Class Action Complaint, ECF No. 173 ("CAC"), at 1.

Before the Court are Defendants two motions to dismiss. ECF Nos. 178, 180. Having
considered the submissions of the parties, the relevant law, and the record in this case, the Court

1

GRANTS the motions to dismiss with leave to amend.

## I. BACKGROUND

### A. Factual Background

#### 1. The Parties

Defendant Cloudera is a "software company that purports to 'empower[] organizations to become data-driven enterprises in the newly hyperconnected world.'" CAC at ¶ 11. Defendant Intel is a semi-conductor technology company that held 17.6% of Cloudera's outstanding common stock as of March 31, 2018. *Id.* at ¶ 54. Defendant Thomas Reilly was formerly Chairman of the Board of Directors of Cloudera and was Cloudera's Chief Executive Officer until July 31, 2019. *Id.* at ¶ 57. Defendant Jim Frankola has been Cloudera's Chief Financial Officer since October of 2012. *Id.* at ¶ 60. Defendant Michael Olson was co-founder of Cloudera, former Chairman of the Cloudera Board of Directors, and served as Cloudera's Chief Strategy Officer from June of 2013 to June 5, 2019. *Id.* at ¶ 62. Defendant Ping Li is a partner at Accel and was a member of Cloudera's Board of Directors between October of 2008 and July of 2018. *Id.* at ¶ 64. Defendants Reilly, Frankola, Olson, and Li are collectively referred to as "Insider Defendants."

Plaintiffs also named as defendants several members of the Board of Directors of Cloudera and Hortonworks, Inc. at the time of the merger between the two companies. These defendants are Martin Cole, Kimberly Hammonds, Rosemary Schooler, Steve Sordello, Michael Stankey, Priya Jain, Robert Bearden, Paul Cormier, Peter Fenton, and Kevin Klausmeyer (collectively, "Director Defendants"). *Id.* at ¶¶ 74–83. The Court refers to Cloudera, Insider Defendants, and Director Defendants collectively as "Cloudera Defendants."

#### 2. Hadoop and Cloudera's Original Business Model

In 2005, Cloudera co-founder Doug Cutting introduced an open source technology called Hadoop Distributed File System, which was designed to be an "operating system for big data." *Id.* at ¶ 11. Cloudera, which was founded in 2008, offered its own version of Hadoop as a product ("Hadoop"). *Id.* Cloudera's two main sources of revenue were subscriptions and services, with

United States District Court
Northern District of California

the majority of revenue generated by subscriptions. *Id.* at ¶ 12. Between 2013 and 2015, products like Cloudera's Hadoop offering were considered the industry leader in big data analytics. *Id.*

However, by 2017, big data enterprise spending began shifting to cloud-based platforms, which had the advantage of offering processing and storage capabilities that could be accessed anywhere using the internet. *Id.* at ¶ 13. These cloud-based offerings allowed companies to avoid the cost of owning and maintaining "on-premise" IT infrastructure, which was required to operate products like Cloudera's original Hadoop software. *Id.* Large technology companies such as Amazon, Google, and Microsoft began to offer cloud-based computing solutions. *Id.* at ¶ 16. By 2017, Cloudera had ceased to market itself as a Hadoop-based company and began to advertise itself as a "leading modern platform for data management, machine learning and advanced analytics." *Id.* at ¶ 15.

### 3. Cloudera's IPO and Altus Cloud Product

On April 28, 2017, Cloudera had its initial public offering ("IPO") and shares of Cloudera's common stock began trading on the New York Stock Exchange. *Id.* at ¶ 18. Cloudera's share price closed on the first day of trading at $18.10. *Id.* Allegedly, starting with Cloudera's IPO prospectus, Cloudera repeatedly misled investors by claiming that it possessed an "original cloud native architecture" and "cloud-native platform."[1] *Id.* at ¶ 19. A June 8, 2017 press release from Cloudera stated that "Cloudera offers the leading cloud-native software platform for machine learning and advanced analytics." *Id.*

In mid-2017, Cloudera released a cloud product called Altus. *Id.* at ¶ 22. Allegedly, Altus lacked attributes of some cloud products "like elasticity and the data lifecycle, which integrates streaming, analytics and machine learning." *Id.* Altus allegedly "was not a cloud-native offering." *Id.* Plaintiffs allege that Cloudera rushed Altus onto the market so that Cloudera could claim that the company offered a competitive cloud product. *Id.* Cloudera's product launch of Altus

---

[1] The CAC contains numerous quotes attributed to Cloudera and Insider Defendants. However, the CAC does not provide a citation to the sources.

Case No. 19-CV-03221-LHK
ORDER GRANTING MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
WITH LEAVE TO AMEND

suffered from technical difficulties and allegedly lacked "any of the key features of effective cloud computing." *Id.* at ¶ 23.

### 4. Cloudera's Secondary Public Offering

On September 27, 2017, Cloudera announced a secondary public offering ("SPO") of its common stock, pursuant to a registration statement on Form S-1. *Id.* at ¶ 24. Cloudera shares were offered at $16.45. *Id.* Cloudera itself sold shares in the SPO, alongside existing stockholders including Defendant Li and his venture capital firm Accel, as well as Defendant Olson. *Id.* at ¶ 25. The SPO prospectus represented that Cloudera possessed a "cloud native" platform and was "leading cloud innovation for big data, extending [Cloudera's] original cloud-native architecture." *Id.* at ¶ 26.

### 5. Merger with Hortonworks

In October of 2018, Cloudera announced that it was acquiring and would merge with Hortonworks, Inc. ("Hortonworks"), which was Cloudera's main Hadoop-focused rival. *Id.* at ¶ 28. Allegedly, Cloudera acquired Hortonworks because Cloudera was unable to achieve organic growth. *Id.* The CAC further alleges that the "Merger Registration Statement materially downplayed the time and expense necessary for the combined Company to make its Hadoop-focused offerings cloud-native." *Id.* The Merger Registration Statement also allegedly misrepresented that Cloudera's "original architecture was designed for the cloud," "runs natively on public cloud infrastructure" and is "[l]eading cloud innovation for big data." *Id.* at ¶ 32.

Defendant Reilly claimed that the merger would "accelerate innovation" and "create a larger, more competitive, more efficient entity." *Id.* at ¶ 29. Defendant Frankola allegedly assured investors that "in terms of looking at our customers and anticipating that we will lose them because of the merger itself, no, we don't anticipate that will occur." *Id.*

The merger of Cloudera and Hortonworks closed on January 3, 2019, and the combined company was called Cloudera. *Id.*

In March of 2019, Cloudera announced a new product called Cloudera Data Platform

United States District Court
Northern District of California

("CDP"), which the CAC alleges was Cloudera's first viable cloud-native offering. *Id.* at ¶¶ 35, 17. Cloudera did not release CDP for the public cloud until September of 2019 and for the private cloud until June of 2020. *Id.* In the meantime, Cloudera allegedly lost customers to other cloud providers like Amazon, Microsoft, and Google because those customers were unwilling to wait for Cloudera to develop and release its own cloud-native product. *Id.*

### 6. Defendants' Alleged Materially False and Misleading Statements

Plaintiffs allege that throughout the Class Period, Cloudera and Insider Defendants made 55 false or misleading statements. *Id.* at ¶¶ 90–166, 199–210; ECF No. 173-4 ("Exchange Act Statements Chart"); ECF No. 173-5 ("Securities Act Statements Chart"). Plaintiffs allege that Cloudera and Insider Defendants made Statements 1–41 in violation of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Statements 42–55 in violation of §§ 11 and 12(a)(2) of the Securities Act of 1933 ("Securities Act"). *Id.*

Plaintiffs further allege that Cloudera and Insider Defendants either knew or recklessly disregarded the fact that: "(i) the statements and omissions they made . . . were materially false and misleading; (ii) their statements would adversely affect the integrity of the market for Cloudera common stock; and (iii) their statements would deceive investors into purchasing shares of Cloudera common stock at artificially inflated prices." CAC at ¶ 4.

These false or misleading statements were allegedly made in Cloudera's SEC filings, earning conference calls, and presentations. Below, the Court has organized these statements chronologically and by source. *See Id.* at ¶¶ 90–166, 199–210. Where Plaintiffs have provided context for the challenged statements the Court has kept that context. There is some overlap between these statements because Plaintiffs allege that some statements violated both the Exchange Act and the Securities Act. The Court has noted the overlap below.

#### April 28, 2017 IPO Prospectus
**Statement 1**
The Company "will further expand our customer opportunity through the continued growth in use cases and managed solutions, the expansion of our partner ecosystem and the proliferation of skills, driven by ease of use and accelerating adoption of the

5

cloud" and that the Company was "only beginning to penetrate market opportunity with Global 8000 companies …"

**Statement 2**
"We believe that, over time, as our customer base grows and a relatively higher percentage of [Cloudera's] subscription revenue is attributable to renewals or greater usage among existing customers relative to new customers, associated sales and marketing expenses and other allocated upfront costs as a percentage of revenue will decrease…"

**Statement 3**
Building on the approach of web-scale consumer internet companies, we have collaborated with the global open source community to innovate and deliver our cloud-native platform." A key element of its strategy was "extending our original cloud-native architecture."

**Statement 4**
Cloudera's "competition" included "public cloud providers who include proprietary data management, machine learning and analytics offerings, such as Amazon Web Services, Google Cloud Platform and Microsoft Azure."

**June 8, 2017 Press Release**
**Statement 5**
Altus is "our first Platform-as-a-Service offering – designed to deliver the speed, convenience and elasticity of public cloud infrastructure, easing the creation for Cloudera customers of new cloud workloads and accelerating the migration of existing workloads to Cloudera's platform running in the cloud."

**Statement 6**
"Cloudera offers the leading cloud native software platform for machine learning and advanced analytics."

**September 7, 2017 Earnings Call**
**Statement 7**
"Our modern platform for machine learning and analytics is optimized for the cloud…The second quarter also saw growth in the adoption of Cloudera Altus, our Platform-as-a-Service offering that enables data engineering and data science workloads to run natively and easily in the public cloud."

**September 28, 2017 SPO Prospectus**
**Statement 8**
"Building on the approach of web-scale consumer internet companies, we have collaborated with the global open source community to innovate and deliver our cloud-native platform."

**Statement 9**
"Key elements of our strategy include… extending our original cloud-native

6

architecture…"

**Statement 10**
"Altus is a cloud service …"

**December 7, 2017 Earnings Call**

**Statement 11**
"[C]loud-native platform[.]"

**Statement 12**
"Cloudera Altus Analytic DB is the first data warehouse cloud service that brings the warehouse to the data through a unique cloud-scale architecture that eliminates complex and costly data movement."

**April 3, 2018 Earnings Call**

**Statement 13**
The Company's Altus offering "delivers the speed, convenience, elasticity and ease-of-use expected in native public cloud services."

**Statement 14**
"And expansion is the larger part of our business, because new customers start small, our expansion deals are more sizable. So we were just over-rotated…"

**Statement 15**
"[T]he cloud is turning out to be a tremendous tailwind for us. . . What I like to say to customers all the time is we are better than Amazon on Amazon."

**Statement 16**
"Our products on Amazon are integrated better and operate better than Amazon's own offerings. So – and we're seeing the move to the cloud take shape unlike it did 2 years ago. So I see nothing that gives me concern about the market."

**Statement 17**
"No changes in the competitive landscape nor end market demand."

**April 4, 2018 Annual Report**

**Statement 18**
The "Key elements" of Cloudera's strategy include that the Company's "original architecture was designed for the cloud. Our software platform runs natively on public cloud infrastructure…"

**Statement 19 and 45**
Cloudera's offerings provided "[c]loud and on-premises deployment at scale and across hybrid cloud environments."

**Statement 20 and 46**
Cloudera's offerings "allow[ed] enterprises to manage both long-lived and transient

7

workloads across environments, mixing on-premises and public cloud infrastructure, including all major public cloud vendors – Amazon Web Services, Microsoft Azure and Google Cloud Platform[.]"

**Statement 21 and 47**
Cloudera's offerings permitted customers to "deploy, configure and monitor their clusters and workloads at scale from a centralized interface across any mix of public cloud or on-premises environments."

### June 6, 2018 Press Release
**Statement 22**
"When we are competing in the cloud, we have so many advantages. Our #1 disadvantage is awareness of our capabilities, and that's what we're ramping up with our general manager machine learning, our marketing team to create awareness. And we think we'll compete very effectively."

### September 5, 2018 Press Release
**Statement 23**
Cloudera had introduced Cloudera Data Warehouse which it represented as "a modern data warehouse for self-service analytics, built with a hybrid cloud native architecture that handles 50PB data workloads and enables hybrid compute, storage, and control for workload portability across public clouds and enterprise data centers."

### September 5, 2018 Earnings Call
**Statement 24**
"With a modern architecture for on-premises deployments and being cloud native for public cloud infrastructure and Platform-as-a-Service implementations, we believe we have the right set of solutions for the next phase of the data warehouse industry."

**Statement 25**
"Cloudera Data Warehouse is a modern data warehouse for self-service analytics. Let me define modern data warehouse and why it's important in this world of exploding data and the Internet of Things. It's a cloud-native architecture."

### October 3, 2018 Merger Conference Call
**Statement 26**
"Our underlying platform, both what Hortonworks is delivering and ours is cloud native technology, and it flourishes in cloud compute environments so we're very excited about accelerating our capabilities there."

**Statement 27**
The combination of the two companies would result in "sales and growth on day one."

### October 3, 2018 Annual Report
**Statement 28 and Statement 44**
Cloudera could "leverage the latest advances in infrastructure including the public cloud for 'big data' applications."

8

**Statement 29 and 49**

"After an initial purchase of our platform, we work with our customers to identify new use cases that can be developed on or moved to our platform, ultimately increasing the amount of data managed on our platform as well as the number and size of our platform deployments."

**Statement 32 and 52**

The Merger would "improve Cloudera's…existing ability to expand customer relationships and increase the penetration of new customer accounts," such that Cloudera would "use the initial sale as a foothold to increase revenue per customer by increasing the amount of data and number of use cases each customer runs through our platform."

**Statement 42**

The Company's product offerings' "original architecture was designed for the cloud" and "run[] natively on public cloud infrastructure[.]"

**Statement 43**

The Company's product offerings is "[l]eading cloud innovation for big data[.]"

**Statement 48**

Cloudera's product "Altus is a cloud service that ... enable[s] customers to address a new set of elastic and transient workloads that would otherwise be impractical to run in the datacenter," highlighting its purportedly "ongoing performance in the areas of cloud," and ability to provide"[c]loud...deployment at scale."

**October 3, 2018 Merger Powerpoint Presentation**

**Statement 30 and 50**

The Merger would "increase cross-sell opportunities[.]"

**Statement 31 and 51**

The Merger would "enlarge addressable market[.]"

**Statement 34 and 53**

Cloudera characterized "Altus" as a "complementary" "cloud" product and asserted the "complementary product[]" would create "Powerful Synergies" for "[r]evenue."

**Statement 35**

Cloudera's "cloud technology brings significant advantages," had "tremendous capabilities[.]"

**Statement 36**

The Company's "underlying platform" consisting of "cloud native technology… flourishes in cloud compute environments so we're very excited."

**October 3, 2018 Merger Registration Statement**

    **Statement 54**

    The Merger Registration Statement provided investors with generalized "possible" "Risk Factors" related to the Merger, stating that "if" a "risk" occurred it "could" or "may" possibly negatively impact the Company.

    **Statement 55**

    While Microsoft, Google and Amazon had a vast commercial advantage in cloud computing, and the scale to render Cloudera's mundane Altus offering effectively irrelevant at the time of the Merger, the Company's relevant SEC filing "Risk Factors" meagerly suggested that the Company "could lose market share to our competitors, which could adversely affect our business, financial condition and results of operations."

**October 3, 2018 Amendment 1 to Merger Registration Statement**

    **Statement 33**

    Cloudera's existing technology as part of the "combined company" could "create the leading enterprise data platform built on modern open source data management, data warehousing, machine learning, advanced analytics and IoT markets across hybrid, public, private and multi-cloud environments."

**December 5, 2019 Earnings Call**

    **Statement 37**

    "[W]e have strong competitive advantages in data warehousing…we offer it in a hybrid fashion so you can do it both on-premise or in the public cloud … We believe data warehouse workloads are naturally going to land on our platform, and we're well positioned to capture those."

    **Statement 38**

    "Customers are coming to our platform, all of them are evaluating cloud, and it's our hybrid cloud capabilities are winning … And so it is -- we are uniquely positioned to run where our customers want to run and give them a lot of flexibility."

**December 6, 2018 Barclays Conference**

    **Statement 39**

    "…We're called Cloudera because when we started, we started with the original Hadoop project, we offered it as a cloud service on Amazon Web Services in 2008 and software, okay? That's why we're called Cloudera …The market has now moved to us because we offer a hybrid capability…. And we already have hybrid capabilities that they have to develop, they've never really innovated in their space. And then, we're going to have multi-cloud. So we're taking it to them, momentum has shifted in our favor and increasingly will go that way."

**March 13, 2019 Earnings Call**

    **Statement 40**

    "And now, who's our #1 competitor? It's Amazon. And we quickly – just even in Q1 as we look at our competitive road map, it's – not Amazon the company. Amazon is a

Case No. 19-CV-03221-LHK
ORDER GRANTING MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
WITH LEAVE TO AMEND

partner, but it's Amazon's house offerings in the data management analytics space."

**Statement 41**
"[W]e feel very strong that market is moving in our direction around the hybrid multi-cloud, and then our functionality is best-in-class."

### 7. Alleged Partial and Full Disclosures

After the market closed on March 13, 2019, Cloudera announced lower than expected guidance for 1Q20 and fiscal year 2020. As a result, Cloudera's share price fell from $14.61 per share on March 13, 2019 to $11.71 per share on March 14, 2019. CAC at ¶ 217. Cloudera then filed a press release "reporting Cloudera's 4Q19 and full year financial results for fiscal year 2019 for the year ended January 31, 2019, which claimed, for 4Q19, total revenues of $144.5 million and subscription revenues were $123 million." *Id.* at ¶ 218. The press release also revealed anticipated negative operation cash flow in the range of $30 million to $40 million for the year 2020. *Id.*

On June 5, 2019, Cloudera reported a first-quarter loss of $103.1 million and cut its fiscal year 2020 guidance, "reducing total revenue guidance by $90 million and stating that it expected recurring revenue growth of only 0% to 10% for the year." *Id.* at ¶ 222. The same day, Cloudera announced Defendant Reilly's departure as CEO and Defendant Olson's departure as Chief Strategy Officer. *Id.* at ¶ 222. In response, Cloudera's share price fell from $8.80 per share on June 5, 2019 to $5.21 per share on June 6, 2019, a 40.80% decline. *Id.* at ¶ 219.

Defendants Reilly and Frankola also announced that Cloudera was "(i) experiencing 'headwinds in bookings from existing customers'; (ii) 'roughly flat' and 'softer' bookings of 'large accounts'; (iii) an 'increased' churn rate with a loss of small customers; and (iv) 'weakness' in sales for midsize customers, as well as 'slip[ing] renewals.'" *Id.* at ¶ 221. Cloudera also announced that it did not yet have data on adoption of its new CDP product. *Id.* Finally, Defendant Reilly admitted that Cloudera was not currently "competitive against what the public cloud guys are offering," and that some customers had moved to "public cloud vendor's native house offerings." *Id.* at ¶ 37.

### B. Procedural Background

On June 7, 2019, a Cloudera shareholder filed a class action securities complaint against Defendants Cloudera, Reilly, Frankola, and Olson. ECF No. 1. On December 16, 2019, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court appointed Plaintiff Mariusz J. Klin and the Mariusz J. Klin MD PA 401K Profit Sharing Plan as Lead Plaintiff. ECF No. 85.

On February 14, 2020, Lead Plaintiff filed a consolidated class action complaint that expanded the class definition, added new claims under the Securities Act of 1933, and added Cade Jones and Larry Lenick as named plaintiffs. ECF No. 91.

On February 28, 2020, Defendants requested that the Court reopen the lead plaintiff appointment process because the consolidated class action complaint added claims and new plaintiffs. ECF No. 117. On March 18, 2020, the Court vacated its order appointing lead plaintiff and lead counsel; ordered publication of notice of the amended complaint in compliance with the PSLRA; and reopened the lead plaintiff appointment process. ECF No. 141.

On July 27, 2020, the Court appointed Mariusz J. Klin and the Mariusz J. Klin MD PA 401K Profit Sharing Plan as Lead Plaintiff and Kahn Swick & Foti, LLC as lead counsel. ECF No. 157.

On September 22, 2020, Lead Plaintiff filed a consolidated amended class action complaint. ECF No. 173 ("CAC"). The CAC alleges five causes of action: (1) violation of § 11 of the Securities Act of 1933 ("Securities") against Cloudera, Intel, Director Defendants, and Insider Defendants; (2) violation of § 12(a)(2) of the Securities Act against Cloudera; (3) violation of § 15 of the Securities Act against Intel, Director Defendants, and Insider Defendants; (4) violation of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5 against Cloudera and Insider Defendants; and (5) violation of § 20(a) of the Exchange Act against Insider Defendants. *Id.* at ¶¶ 326–257.

On September 27, 2020, Cloudera Defendants filed a motion to dismiss. ECF No. 178 ("Mot."). Cloudera Defendants also filed a request for judicial notice. ECF No. 179. On

Case No. 19-CV-03221-LHK
ORDER GRANTING MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
WITH LEAVE TO AMEND

November 24, 2020, Plaintiffs filed an opposition. ECF No. 184 ("Opp."). On December 22, 2020, Cloudera Defendants filed a reply. ECF No. 188 ("Reply").

On September 27, 2020, Intel also filed a motion to dismiss. ECF No. 180 ("Intel Mot."). On November 24, 2020, Plaintiffs filed an opposition. ECF No. 185. On December 22, 2020, Intel filed a reply. ECF No. 187.

On March 5, 2021, Plaintiffs filed an administrative motion for leave to file a sur-reply.[2] ECF No. 200. On March 9, 2021, both Cloudera Defendants and Intel filed oppositions. ECF Nos. 201, 202.

On March 17, 2021, Plaintiffs filed a request for judicial notice. ECF No. 203.

## C. Request for Judicial Notice

In connection with their motion to dismiss, Cloudera Defendants request judicial notice of thirty-five documents, including excerpts of sixteen documents Cloudera filed with the SEC and nine quarterly earnings calls. *See* Cloudera Defendants' Request for Judicial Notice, ECF No. 179 ("RJN").

"Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiffs' claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."

---

[2] Plaintiffs' administration motion seeks leave to file a sur-reply in further opposition to Defendants' motions to dismiss. ECF No. 200. Plaintiffs argue that Cloudera has made several public statements that further strengthened Plaintiffs' claims of falsity since November 24, 2020, when Plaintiffs filed their oppositions to Defendants' motions to dismiss. A sur-reply is appropriate where defendants have raised a new argument or evidence in a reply brief and plaintiff should be offered the opportunity to respond. *See El Pollo Loco v. Hashim*, 316 F.3d 1032, 1040–1041 (9th Cir. 2003) (permitting plaintiff to file a sur-reply to address new legal arguments raised in reply). Plaintiffs have failed to identify new arguments or evidence raised for the first time in reply. Moreover, Plaintiffs proposed sur-reply introduces allegations not contained or referenced in the CAC. The Court therefore may not rely on that evidence when ruling on the motions to dismiss. *See Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Accordingly, Plaintiffs' administrative motion to file a sur-reply is DENIED.

13

*Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted). The Court may "treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

Here, Plaintiffs' CAC refers to and quotes from the contents of Cloudera's quarterly earnings calls that occurred on June 8, 2017, September 7, 2017, December 7, 2017, April 3, 2018, June 6, 2018, September 5, 2018, December 5, 2018, March 13, 2019, and June 5, 2019. CAC at ¶¶ 96–97, 99–101, 113–115, 119–121, 132, 137–138, 154–155, 210, 19. Moreover, Plaintiffs do not dispute the authenticity of these documents. Therefore, judicial notice of Exhibits 3, 5, 8, 13, 16, 17, 23, 27, and 30 is appropriate.

In addition, the CAC refers to and quotes the contents of Cloudera's IPO Prospectus filed on April 28, 2017; Cloudera's 10-Q filed on June 9, 2017; Cloudera's 10-Q filed on September 12, 2017; Cloudera's SPO Prospectus filed September 28, 2017; Cloudera's 10-Q filed on December 8, 2017; Cloudera's 10-Q filed on January 31, 2018; Cloudera's 10-Q filed on June 6, 2018; Cloudera's 10-Q filed on July 31, 2018; Cloudera's Form 8-K filed on October 3, 2018; Cloudera's Final Merger Prospectus filed on November 27, 2018; and Cloudera's 10-Q filed on December 6, 2018. *Id.* at ¶¶ 16, 96, 99, 24, 113, 117, 16, 131, 136, 148, 195, 153. Again, Plaintiffs do not dispute the authenticity of these documents. Accordingly, judicial notice of Exhibits 1, 4, 6, 7, 9, 12, 14, 15, 18, 20, 22, and 25 is appropriate.

Finally, the CAC refers to and quotes the contents of Cloudera's mergers and acquisitions conference call transcript dated October 3, 2018. *Id.* at ¶ 29, 141. Again, Plaintiffs do not dispute the authenticity of this document. Accordingly, judicial notice of Exhibit 21 is appropriate. The Court otherwise DENIES Cloudera Defendants' request for judicial notice at this time, as the remaining documents of which Defendants request judicial notice are either not referenced in the CAC, or are not necessary to the resolution of Cloudera Defendants' motion.

Case No. 19-CV-03221-LHK
ORDER GRANTING MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
WITH LEAVE TO AMEND

As such, the Court GRANTS Cloudera Defendants' request for judicial notice of Exhibits 1, 3–9, 12–18, 20–23, 25, 27, 30 in support of the motion to dismiss. However, to the extent any facts in these documents are subject to reasonable dispute, the Court will not take judicial notice of those facts. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Plaintiffs also seek judicial notice of one exhibit. ECF No. 203. Specifically, Plaintiffs seek judicial notice of Cloudera's March 10, 2021 fourth quarter fiscal year 2021 ("4Q21") earnings conference call transcript. ECF No. 203-2 ("Exhibit A"). Plaintiffs admit that Exhibit A cannot be incorporated by reference "as it was not cited in nor available when Plaintiffs filed their Complaint." *Id.* at 1. Cloudera Defendants oppose Plaintiffs' request on the ground that the Court may not rely on Exhibit A to decide the motions to dismiss because it was not cited or referenced in Plaintiffs' CAC. ECF No. 204.

Exhibit A is not cited in the CAC and therefore is not a proper subject of incorporation by reference. Nonetheless, Exhibit A is an SEC filing and a "publicly-filed document[] whose accuracy cannot reasonably be questioned and [is] therefore subject to judicial notice." *In re Pivotal Sec. Lit.*, 2020 WL 4193384, at *5 (N.D. Cal. July 21, 2020). Therefore, the Court GRANTS Plaintiffs' request judicial notice. However, the Court takes judicial notice of this document solely for the fact that Cloudera made the statements therein. The Court does not take judicial notice of the truth of any facts asserted in Exhibit A.

## II. LEGAL STANDARD

### A. Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief may be granted. Because Plaintiffs have brought their claims as a federal securities fraud action, Plaintiffs securities' fraud claims are not subject to the notice pleading standards under Federal Rule of Civil Procedure 8(a)(2), which require litigants to provide "a short and plain statement of the claim showing that the pleader is

Case No. 19-CV-03221-LHK
ORDER GRANTING MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
WITH LEAVE TO AMEND

entitled to relief." Instead, Plaintiffs must "meet the higher, [more] exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA)." *Or. Pub. Emp. Ret. Fund v. Apollo Group Inc.*, 774 F.3d 598, 603–04 (9th Cir. 2014).

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Plaintiffs must include "an account of the time, place, and specific content of the false representations" at issue. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted). Rule 9(b)'s particularity requirement "applies to all elements of a securities fraud action." *Apollo Group*, 774 F.3d at 605.

The "PSLRA imposes additional specific pleading requirements, including requiring plaintiffs to state with particularity both the facts constituting the alleged violation and the facts evidencing scienter." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012). In order to properly allege falsity, "a securities fraud complaint must . . . specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." *Id.* (internal quotation marks and alteration omitted). In addition, in order to "adequately plead scienter under the PSLRA, the complaint must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (internal quotation marks omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). Furthermore, "'a plaintiff may plead

United States District Court
Northern District of California

[him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . .

claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*,

60 F.3d 1234, 1239 (7th Cir. 1995)).

### B. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely

granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d

1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted).

Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the

opposing party, cause undue delay, or be futile, or if the moving party has acted in bad

faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

The Court incorporates herein the definitions of "Insider Defendants," "Director

Defendants," and "Cloudera Defendants" in the Factual Background Section, *infra* Section

I(A)(1). Plaintiffs allege five causes of action: (1) violation of § 11 of the Securities Act against

Cloudera, Intel, Director Defendants, and Insider Defendants; (2) violation of § 12(a)(2) of the

Securities Act against Cloudera; (3) violation of § 15 of the Securities Act against Intel, Director

Defendants, and Insider Defendants; (4) violation of § 10(b) of the Exchange Act and SEC Rule

10b-5 against Cloudera and Insider Defendants; and (5) violation of § 20(a) of the Exchange Act

against Insider Defendants. *Id.* at ¶¶ 326–257. The Court first addresses Plaintiffs' Exchange Act

claims and then addresses Plaintiffs' Securities Act claims.

Because the Court below finds that none of the alleged false or misleading statements are

actionable, the Court need not reach the parties' arguments regarding scienter or Intel's arguments

regarding control person liability. *See* Mot. at 20; Intel Mot. at 3. However, if Plaintiffs choose to

file an amended complaint, Plaintiffs must address the deficiencies identified in Defendants'

motions to dismiss. Failure to address these deficiencies will result in dismissal of Plaintiffs'

17

deficient claims with prejudice.

**A. Plaintiffs' Claims Under § 10(b) of the Exchange Act and Rule 10b-5**

"To plead a claim under section 10(b) and Rule 10b-5, Plaintiffs must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Apollo Group*, 774 F.3d at 603.

Cloudera Defendants do not argue that Plaintiffs have failed to allege the following four elements: (1) the connection between the misrepresentations or omissions and the purchase or sale of a security, (2) reliance, (3) economic loss, or (4) loss causation. Thus, the Court does not address these elements.

However, Cloudera Defendants do contend that Plaintiffs have failed to allege (1) material misrepresentations or omissions, and (2) scienter. As discussed in detail below, the Court grants Cloudera Defendants' motion to dismiss Plaintiffs' § 10(b) claim because Cloudera Defendants' allegedly false or misleading statements are either (1) forward-looking statements accompanied by meaningful cautionary language, and therefore immunized under the PSLRA's Safe Harbor provision; (2) not actionable as statements of corporate optimism; or (3) because Plaintiffs have failed to adequately allege that the statements were false when made. Therefore, the Court does not address Cloudera Defendants' arguments regarding scienter.

**1. Failure to Adequately Allege Falsity**

To assert a claim under the PSLRA, Plaintiffs must plead with particularity the element of falsity. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). "The PSLRA has exacting requirements for pleading 'falsity.'" *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). To satisfy these "exacting requirements," Plaintiffs must plead "specific facts indicating why" the statements at issue were false when made. *Id*; *see also Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) (explaining that plaintiffs' complaint was required to allege specific facts that show why statements were false when made). As such,

United States District Court
Northern District of California

Plaintiffs must allege "contemporaneous facts that would establish a contradiction between the alleged materially misleading statements and reality." *Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*, 2016 WL 7475555, at *3 (N.D. Cal. Dec. 29, 2016). Moreover, to be actionable, statements must be false "at [the] time by the people who made them." *Ronconi*, 253 F.3d at 430. "The fact that [a] prediction proves to be wrong in hindsight does not render the statement untrue when made." *In re VeriFone Sec. Litig.*, 11 F.3d 865, 871 (9th Cir. 1993).

Cloudera Defendants argue that Plaintiffs have failed to adequately plead falsity for all 41 statements that Plaintiffs challenge under § 10(b) of the Exchange Act. Specifically, Cloudera Defendants argue that Plaintiffs have failed to plead any contemporaneous facts showing that Cloudera "lacked any viable 'cloud-native technology,'" and therefore was unable "to compete against the largest public cloud vendors such as Microsoft, Google, and Amazon." Mot. at 13 (quoting CAC at ¶ 144). Plaintiffs argue in opposition that they have sufficiently pled allegations of falsity to survive a motion to dismiss. Opp. at 11.

The Court agrees that Plaintiffs have failed to adequately plead falsity with respect to some of the challenged statements. The Court first addresses Cloudera Defendants' statements regarding Cloudera's cloud products. The Court then turns to five other statements for which Plaintiffs have failed to adequately plead falsity.

### a. Statements Regarding Cloudera's Cloud Products

Plaintiffs challenge 27 statements made by Cloudera Defendants during the Class Period that concern Cloudera's cloud product offerings. *See* ECF No. 173-4 (Statements 3–13, 18–21, 23–26, 28, 33–39); CAC at ¶¶ 90–166. Each of these statements referenced Cloudera's products and their cloud capabilities. Many of the statements explicitly reference Cloudera's "cloud-native platform" or "cloud-native architecture," or otherwise tout the cloud capabilities of Cloudera's product offerings. *See, e.g.*, Statement 6 ("Cloudera offers the leading cloud native software platform for machine learning and advanced analytics."); Statement 9 ("Key elements of our strategy include . . . extending our original cloud-native architecture . . ."); Statement 10 ("Altus is

19

a cloud service …"); and Statement 26 ("Our underlying platform, both what Hortonworks is delivering and ours is cloud native technology, and it flourishes in cloud compute environments so we're very excited about accelerating our capabilities there.").

Plaintiffs argue that all 27 statements were materially false or misleading when made because Cloudera Defendants represented that Cloudera had "cloud-native technology"; "cloud-native architecture"; products that were "optimized for the cloud"; or some variant therein. *See* Opp. at 11; ECF No. 173-4. Plaintiffs allege that in actuality Cloudera lacked "viable cloud-native products," "cloud-native architecture," and Cloudera's products were not "optimized for the cloud." *See, e.g.*, CAC at ¶¶ 94, 95, 101. Cloudera Defendants argue that Plaintiffs have failed to adequately allege the falsity of any of Cloudera Defendants' statements regarding Cloudera's cloud products. Mot. at. 13.

Specifically, Plaintiffs allege that Cloudera Defendants' statements regarding Cloudera's cloud products were false or misleading for two different reasons. In some instances, the CAC alleges that Cloudera lacked "cloud-native products" or "cloud-native architecture" altogether. *See, e.g.*, CAC at ¶¶ 94, 95, 101. Thus, Plaintiffs argue that Cloudera Defendants' statements were false because those statements falsely claimed that Cloudera had cloud-native technology or architecture when Cloudera lacked that technology.

Plaintiffs also allege that Cloudera lacked "viable cloud-native products"; "legitimate cloud offering"; or cloud products "optimized for the cloud." *Id.* at ¶¶ 95, 101, 144, 149. In these instances, Plaintiffs appear to argue that Cloudera Defendants' statements regarding Cloudera's cloud products were false or misleading because those statements described Cloudera's technology too optimistically. The Court addresses these two sets of allegations in turn.

Plaintiffs first allege that Cloudera Defendants' numerous statements touting Cloudera's "cloud-native" products and "cloud-native architecture" were false when made because Cloudera lacked cloud-native technology during the Class Period. *See, e.g., id.* at ¶¶ 94, 95, 101. These allegations are deficient because Plaintiffs do not explain what it meant to have "cloud-native"

20

products or "cloud-native architecture" at the time Cloudera Defendants made the challenged statements. Plaintiffs must provide "specific facts" indicating why Cloudera Defendants' statements were false when made. *Metzler*, 540 F.3d at 1070. Without a contemporaneous definition or explanation for what "cloud-native" technology meant when Cloudera Defendants made the challenged statements, the Court has no basis to find that Plaintiffs have adequately pled that Cloudera Defendants' statements were false. This is because if "cloud-native" lacked a specific meaning, then Cloudera Defendants' statements could not have been false when made.

Plaintiffs do offer an explanation for "cloud-native" or "cloud-native architecture" in the CAC, but that explanation rests on an article published by Cloudera's Chief Product Officer Arun Murthy on February 6, 2020, seven months after the close of the Class Period and one to two years after most of the challenged statements were made.[3] The CAC alleges that according to Murthy, "cloud native" and "cloud architecture" "mean that an offering has specific material attributes such as the use of containers and Kubernetes, seamless scalability, security and elasticity." CAC at ¶ 192. Plaintiffs then allege that none of Cloudera's Class Period products possessed these attributes. *Id.* As such, Plaintiffs contend, each of Cloudera Defendants' Class Period statements touting Cloudera's "cloud-native" products and "cloud-native architecture" were false or materially misleading when made. Opp. at 9.

The PSLRA "has exacting requirements for pleading 'falsity,'" which include the requirement that plaintiffs plead "specific facts" that indicate "the misleading nature of the statements *when made*." *Metzler*, 540 F.3d at 1070 (emphasis added). Murthy's post-Class Period definition of "cloud native" or "cloud architecture" is insufficient to demonstrate that "cloud native" or "cloud-native architecture" was understood to include those particular attributes when Cloudera Defendants made the challenged statements during the Class Period. If "cloud-native" had a different technical meaning during the Class Period, then the Court has no basis to find that

---

[3] The CAC refers to Murthy as Cloudera's "Chief Product Officer" and the opposition brief refers to Murthy as Cloudera's "Chief Technology Officer." The Court adopts the title alleged in the CAC.

United States District Court
Northern District of California

Plaintiffs have adequately pled falsity with respect to Cloudera Defendants' statements.

Thus, in order to adequately plead that Cloudera Defendants' statements touting Cloudera's cloud-native technology were false when made, Plaintiffs must explain what "cloud native" meant when Cloudera Defendants made their allegedly false statements. A definition of cloud-native from more than a year after many of the challenged statements were made does not establish that Cloudera Defendants' statements were false when made. If cloud native had no set meaning when Cloudera Defendants made their challenged statements, then the Court cannot find that Plaintiffs have adequately pled that Cloudera Defendants' statements were false when made.

Therefore, Plaintiffs must explain what "cloud native" meant when Cloudera Defendants made their allegedly false statements and why Cloudera Defendants' statements touting Cloudera's cloud-native technology and architecture were false when made. *See Metzler*, 540 F.3d at 1070 (explaining that plaintiffs must plead specific facts that indicate "the misleading nature of the statements when made.").

At other points in the CAC, Plaintiffs allege that Cloudera Defendants' statements regarding Cloudera's cloud products were false or misleading because Cloudera lacked "viable cloud-native products"; "legitimate cloud offering"; or cloud products "optimized for the cloud." CAC at ¶¶ 95, 144, 149. Where Plaintiffs makes these allegations, Plaintiffs appear to admit that Cloudera had a cloud product, but argue that Cloudera Defendants' statements were false or misleading because Cloudera Defendants described Cloudera's cloud product too optimistically. To the extent that Plaintiffs allege that Cloudera Defendants' statements were false or misleading merely because those statements discussed Cloudera's cloud product in too optimistic of terms, the Court notes that those statements are likely non-actionable corporate puffery.

In support of this conclusion, the Court notes that in two recent cases, courts in this district have found defendant's statements regarding the attributes of their technology products not actionable as corporate puffery on a similar set of facts. In *In re Pivotal Securities Litigation*, the court found that defendants' statements that the company provided a "cutting-edge," "leading,"

Case No. 19-CV-03221-LHK
ORDER GRANTING MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
WITH LEAVE TO AMEND

and "turnkey cloud-native platform" not actionable because these statements were "vague assessments that represent the feel good speak that characterizes non-actionable puffing." 2020 WL 4193384, at *7 (internal quotation marks and citation omitted). Similarly, in *In re Intel Corporation Securities Litigation*, the court found that defendants' statements that the company's products "optimize interconnectivity with a focus on speed without compromising data security" and "improve[] performance by creating faster multitasking with optimal data security" were not actionable because they were "vague and immaterial as a matter of law." 2019 WL 1427660, at *12 (N.D. Cal. Mar. 29, 2019).

Thus, if Plaintiffs fail to adequately allege that Cloudera lacked cloud-native technology or cloud-native architecture, then Cloudera Defendants' statements optimistically touting the quality of Cloudera's cloud products are likely to be non-actionable corporate puffery. *See, e.g., In re Pivotal*, 2020 WL 4193384, at *7; *In re Intel*, 2019 WL 1427660, at *12.

In sum, Plaintiffs have failed to adequately plead that Cloudera Defendants' statements regarding Cloudera's "cloud-native" products and "cloud-native" architecture were false when made. As such, the Court finds that, with respect to Statements 3–13, 18–21, 23–26, 28, and 33–39, Plaintiffs have failed to adequately plead falsity as required by the PSLRA.

**b. Further Statements for which Plaintiffs have Failed to Plead Falsity**

Plaintiffs have also failed to adequately plead falsity with respect to six other challenged statements. Statement 1 states that Cloudera "will further expand our customer opportunity through the continued growth in use cases and managed solutions, the expansion of our partner ecosystems and the proliferation of skills, driven by ease of use and accelerating adoption of the cloud." CAC at ¶ 90; ECF No. 173-4, at 2. Plaintiffs contend that this statement falsely conveyed that (1) Cloudera was experiencing growth in its user base for cloud products, and (2) Cloudera's cloud products were easy to use. *Id.*

Plaintiffs allege that the first half of Statement 1 was false when made because Cloudera was not experiencing growth in its user base. First, Plaintiffs have failed to plead any specific

23

factual allegations regarding Cloudera's user base in April of 2017 when the statement was made. The only specific factual allegation that Plaintiffs provide concerning Cloudera's user base is Cloudera's 2019 customer data. *See Id.* at ¶¶ 220–221. Factual allegations concerning Cloudera's customer base in 2019 do not demonstrate that Cloudera Defendants' 2017 statement was false when made. Plaintiffs must allege "contemporaneous facts that would establish a contradiction between the alleged materially misleading statements and reality." *Norfolk Cty. Ret. Sys.*, 2016 WL 7475555, at *3.

Moreover, even if Plaintiffs had plead specific facts demonstrating that Cloudera's user base was not expanding in April of 2017, that fact would not render Cloudera Defendants' statement false when made. The statement makes no specific claim about whether Cloudera's user base is expanding. Rather, the statement makes a claim about future actions the company will take. Plaintiffs' allegations therefore do not provide a basis upon which "this court can make inferences [of falsity] permissible under Rule 9(b)." *In re Stratosphere*, 1997 WL 581032, at *13.

Plaintiffs allege that the second half of Statement 1 was false when made because Cloudera's products were not easy to use. *Id.* Plaintiffs' only specific allegation to support the falsity of Cloudera Defendants' challenged statement is a comment from Defendant Cole in September of 2019, after the end of the Class Period, in which Defendant Cole states that Cloudera's earlier products "weren't easy to use." CAC at ¶ 95. The Ninth Circuit has held that a plaintiff can establish the falsity of an earlier statement "by means of a later statement by the defendant," where the later statement is "similar to 'I knew it all along.'" *Yourish v. Cal. Amplifier*, 191 F.3d 983, 996 (9th Cir. 1999). Plaintiffs have not met that standard here, as nothing in Defendant Cole's statement resembles an "I knew it all along" admission. *Id; see also Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020) (finding that an after-the-fact statement by defendant does not constitute an admission "unless it contradicts the substance of an earlier statement and essentially states 'I knew it all along.'"). Accordingly, Plaintiffs have not pled falsity with respect to Statement 1.

United States District Court
Northern District of California

Plaintiffs have also failed to adequately plead falsity with respect to Statement 2. Statement 2 states "[w]e believe that, over time, as our customer base grows and a relatively higher percentage of [Cloudera's] subscription revenue is attributable to renewals or greater usage among existing customers relative to new customers, associated sales and marketing expenses and other allocated upfront costs as a percentage of revenue will decrease . . . ." CAC at ¶ 91; ECF No. 173-4, at 3.

Plaintiffs allege that this statement was false when made because it falsely conveyed that Cloudera's strategy was an effective attempt to grow profits, whereas in reality Cloudera had to expend high sales and marketing funds to promote its Hadoop-focused platform. *Id.* at ¶ 92. However, the only specific fact that Plaintiffs have alleged to support this argument is that "the Company was later forced to acknowledge on June 5, 2019, that it spent an astonishing $119 million on sales and marketing in 1Q20." *Id.* The fact that Cloudera spend $119 million on sales and marketing in early 2019 does not establish that Cloudera Defendants' statement in April of 2017 was false when made. "The fact that [a] prediction proves to be wrong in hindsight does not render the statement untrue when made." *In re VeriFone Sec. Litig.*, 11 F.3d at 871. Plaintiffs have therefore failed to plead falsity with respect to Statement 2.

Plaintiffs have also failed to plead falsity with respect to Statement 14, which states: "And expansion is the larger part of our business, because new customers start small, our expansion deals are more sizable. So we were just over-rotated . . ." CAC at ¶ 121; ECF No. 173-4, at 12. Plaintiffs allege that this statement was false when made because Cloudera was not "over-rotated" in its customer sales, but rather that Cloudera had weak products that could not compete against competitors' offerings. *Id.* at ¶ 120. The only specific allegation that Plaintiffs provide to support the falsity of Cloudera Defendants' statement is that in September of 2019 Cloudera was forced to launch its new cloud product CDP in order to compete with other cloud providers. *Id.*

The fact that Cloudera later launched a new cloud product to compete with competitors does not establish that its previous product was weak or inadequate. "[W]hile the court assumes

Case No. 19-CV-03221-LHK
ORDER GRANTING MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
WITH LEAVE TO AMEND

that the facts in a complaint are true, it is not required to indulge unwarranted inferences in order to save a complaint from dismissal." *Metzler*, 540 F.3d at 1064–65. Moreover, Cloudera's subsequent launch of CDP does not demonstrate the falsity of Cloudera Defendants' statement. Accordingly, Plaintiffs have failed to adequately allege falsity with respect to Statement 14.

Plaintiffs have also failed to adequately plead falsity with respect to Statement 16, which states: "Our products on Amazon are integrated better and operate better than Amazon's own offerings. So – and we're seeing the move to the cloud take shape unlike it did 2 years ago. So I see nothing that gives me concern about the market." CAC at ¶ 120; ECF No. 173-4, at 14. Plaintiffs allege that this statement was false when made because it falsely conveyed that Cloudera's products gave Cloudera a competitive advantage in the cloud market. *Id.* However, Plaintiffs have failed to adequately plead factual allegations to support an "inference[] [of falsity] permissible under Rule 9(b)." *In re Stratosphere Corp*, 1997 WL 581032, at *13. Specifically, Plaintiffs allege that Cloudera Defendants' statement was false because Cloudera lacked cloud-native services and Cloudera could not provide public cloud services comparable to its competitors. CAC at ¶ 122.

As the Court has already explained, Plaintiffs have failed to adequately plead falsity with respect to Cloudera's lack of cloud-native products. Plaintiffs also allege that "Cloudera's competitors' cloud technologies were vastly outperforming the Company's Hadoop-focused platform." *Id.* However, Plaintiffs fail to allege any contemporaneous factual allegations to support this claim. Plaintiffs must allege specific "contemporaneous facts that would establish a contradiction between the alleged materially misleading statements and reality." *Norfolk*, 2016 WL 7475555, at *3. Accordingly, Plaintiffs have failed to adequately plead falsity with respect to Statement 16.

Plaintiffs have also failed to plead falsity with respect to Statement 17, which states that Cloudera Defendants saw "[n]o changes in the competitive landscape nor end market demand." CAC at ¶ 120; ECF No. 173-4, at 15. Plaintiffs allege that this statement was false when made

Case No. 19-CV-03221-LHK
ORDER GRANTING MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
WITH LEAVE TO AMEND

1    because the statement suggested that Cloudera's poor results were due to misalignment of sales

2    resources, rather than the movement towards cloud offerings.  Plaintiffs allege two specific facts to

3    support this contention.  *Id.* at ¶ 122.

4         First, Plaintiffs allege that when Cloudera launched its CDP cloud product in September of

5    2019, Cloudera Defendants explained that the product was necessary because there had been

6    "changes in the competitive landscape [and] end market demand."  *Id.*  Plaintiffs also allege that

7    on June 5, 2019, Defendant Cole admitted that Cloudera was "[not] really competitive against

8    what the public cloud guys [were] offering" during the Class Period.  *Id.* at ¶ 95.  Plaintiffs argue

9    that these statements demonstrate the falsity of Cloudera Defendants' earlier statement.

10        Plaintiff can establish the falsity of an earlier statement "by means of a later statement by

11   the defendant," where the later statement is "similar to 'I knew it all along.'"  *Yourish*, 191 F.3d

12   983 at 996.  Plaintiffs have not met that standard here, as nothing in either of Cloudera

13   Defendants' later statements resembles an "I knew it all along" admission.  *Id; see also Lopes*,

14   2020 WL 1465932, at *11 (same).  Accordingly, Plaintiffs have failed to adequately plead falsity

15   with respect to Statement 17.

16        Finally, Plaintiffs have failed to adequately plead falsity as to Statement 29, which states

17   "[a]fter an initial purchase of our platform, we work with our customers to identify new use cases

18   that can be developed on or moved to our platform, ultimately increasing the amount of data

19   managed on our platform as well as the number and size of our platform deployments."  CAC at ¶

20   146; ECF No. 173-4, at 26.  Plaintiffs allege that this statement was false when made because

21   Cloudera's customer base was not expanding.  However, nothing in the challenged statement

22   claims that Cloudera's customer base was expanding.  Rather, the statement explains what

23   Cloudera does when a new customer purchases Cloudera's product.  As such, Plaintiffs' allegation

24   does not provide a basis upon which "this court can make inferences [of falsity] permissible under

25   Rule 9(b)."  *In re Stratosphere Corp.*, 1997 WL 581032, at *13.  Plaintiffs have therefore failed to

26   adequately plead falsity with respect to Statement 29.

27

28
     Case No. 19-CV-03221-LHK
     ORDER GRANTING MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
     WITH LEAVE TO AMEND

Accordingly, the Court finds that, with respect to Statements 1–14, 16–21, 23–26, 28–29, and 33–39, Plaintiffs have failed to adequately plead falsity as required by the PSLRA.  Therefore, the Court GRANTS Cloudera Defendants' motion to dismiss as to these statements.

## 2.  General Statements of Corporate Optimism

In the Ninth Circuit, "vague, generalized assertions of corporate optimism or statements of mere puffing are not actionable material misrepresentations under federal securities laws because no reasonable investor would rely on such statements."  *In re Fusion-io, Inc. Sec. Lit.*, 2015 WL 661869, at *14 (N.D. Cal. Feb. 12, 2015) (internal quotation marks omitted); *see also In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) ("[P]rofessional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives.").  This is because "[w]hen valuing corporations, . . . investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers."  *Id*; *see also In re iPass, Inc. Sec. Litig.*, 2006 WL 496046, at *4 (N.D. Cal. Feb. 28, 2006) (generalized statements of optimism are not actionable because they are "not capable of objective verification," and "lack a standard against which a reasonable investor could expect them to be pegged" (internal quotation marks omitted)).

For example, a court held not actionable as "mere puffery" statements from defendants that "[w]e are very pleased with the learning from our pilot launch," "so far we're getting really great feedback," and "we are very pleased with our progress to date."  *Wozniak v. Align Tech., Inc*., 2012 WL 368366, at *4–5 (N.D. Cal. Feb. 3, 2012).  Similarly, "statements projecting 'excellent results,' a 'blowout winner' product, 'significant sales gains,' and '10% to 30% growth rate over the next several years'" have been held to be non-actionable as mere corporate puffery.  *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005).

Cloudera Defendants argue that many of the statements identified in the CAC are non-actionable statements of corporate puffery.  *See* Mot. at 9 (citing Statements 1, 3, 5–9, 11–13, 15–19, 22–41, 42–45, 49–53).  The Court has already dismissed many of these statements for failure to allege falsity.  Of the remaining statements, the Court agrees that some of the allegedly false or

misleading statements amount to nothing more than corporate puffery.

Specifically, the Court agrees with Cloudera Defendants that Statements 15, 22, 40, and 41 fall within this category of non-actionable statements, as these statements are all general and vague remarks of corporate optimism. *See* Statement 15 ("The cloud is turning out to be a tremendous tailwind for us . . . What I like to say to customers all the time is we are better than Amazon on Amazon."); Statement 22 ("When we are competing in the cloud, we have so many advantages. Our #1 disadvantage is awareness of our capabilities, and that's what we're ramping up with our general manager machine learning, our marketing team to create awareness. And we think we'll compete very effectively."); Statement 40 ("And now, who's our #1 competitor? It's Amazon . . . it's Amazon's house offerings in the data management analytics space."); and Statement 41 ("[W]e feel very strong that market is moving in our direction around the hybrid multi-cloud, and then our functionality is best-in-class."). CAC at ¶¶ 120, 132, 163; ECF No. 173-4.

These "vague statements of optimism" and other "feel good monikers" are not actionable statements under the PSLRA. *Police Retirement Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014). Moreover, they echo statements that other courts in this circuit, including this Court, have previously found to be non-actionable statements of corporate puffery. *See, e.g.*, *City of Royal Oak Retirement System v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012) (statements that company has "strong demand metrics and good momentum," that other companies were "strong partners," and "our demand indicators are strong, our product portfolio is robust" were non-actionable statements of mere corporate optimism); *In re Fusion-io*, 2015 WL 661869, at *15 (statements that "we are well positioned to capture a significant share of the opportunity from enterprise to hyperscale over the next few years" and "we exited fiscal 2013 with a significantly more diversified customer and product base, which we believe provides a sound basis for business expansion going forward" were non-actionable).

Accordingly, the Court finds that Statements 15, 22, 40, and 41 are non-actionable

United States District Court
Northern District of California

1    corporate puffery. Therefore, the Court GRANTS Cloudera Defendants' motion to dismiss as to

2    these statements.

3        **3.  Forward-Looking Statements**

4        Under the PSLRA "Safe Harbor" provision, "forward-looking statements" are not

5    actionable as a matter of law if they are identified as such and accompanied by "meaningful

6    cautionary statements identifying important factors that could cause actual results to differ

7    materially from those in the forward looking statement." *See* 15 U.S.C. § 78u–5(c)(1)(A)(i). A

8    forward-looking statement is "any statement regarding (1) financial projections, (2) plans and

9    objectives of management for future operations, (3) future economic performance, or (4) the

10   assumptions 'underlying or related to' any of these issues." *No. 84 Employer–Teamster Joint*

11   *Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003) (citing

12   15 U.S.C. § 78u-5(i)). "[I]f a forward-looking statement is identified as such and accompanied by

13   meaningful cautionary statements, then the state of mind of the individual making the statement is

14   irrelevant, and the statement is not actionable regardless of the plaintiff's showing of scienter." *In*

15   *re Cutera*, 610 F.3d at 1112.

16       If a forward-looking statement is not identified as such or is unaccompanied by meaningful

17   cautionary language, then the statement is actionable only if the plaintiff proves that the forward-

18   looking statement "was made with actual knowledge by that person that the statement was false or

19   misleading." 15 U.S.C. § 78u–5(c)(1)(B)(i).

20       Cloudera Defendants argue that many of the statements identified in the CAC are forward-

21   looking and therefore protected under the Safe Harbor. *See* Mot. at 11 (citing Statements 1–3, 9,

22   16, 17, 22, 24, 27, 28, 30–34, 37, 39, 41, 44, 50–53).[4] The Court has already dismissed many of

23   these statements for failure to allege falsity or because they were non-actionable statements of

24

25   ───────────────

26   [4] Statements 1–3 are not protected by the PSLRA Safe Harbor because the Safe Harbor provision
     does not apply to statements "made in connection with an initial public offering" of stock. *See* 15
     U.S.C. § 77z–2(b)(2)(D); *see also Constanzo v. DXC Tech. Co.*, 2020 WL 4284838, at * 7 (N.D.
27   Cal. July 27, 2020) (same).

                                              30
28   Case No. 19-CV-03221-LHK
     ORDER GRANTING MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
     WITH LEAVE TO AMEND

corporate puffery. Of the remaining statements, the Court agrees that some of the alleged misstatements are forward-looking and therefore protected under the Safe Harbor.

Specifically, the Court agrees with Cloudera Defendants that Statements 27, 30, 31, and 32 fall within this category of non-actionable statements because these statements are forward-looking and therefore protected under the Safe Harbor.

Statements 27, 30, 31, and 32 all relate to the announced merger between Cloudera and Hortonworks. Mot. at 10. The Court agrees with Cloudera Defendants that Statements 27, 30, 31, and 32 all concern future operational expectations or future economic performance and opportunities after the merger. *See* Statement 27 (The combination of the two companies would result in "sales and growth on day one."); Statement 30 (The Merger would "increase cross-sell opportunities[.]"); Statement 31 (The Merger would "enlarge addressable market[.]"); and Statement 32 (The merger would "improve Cloudera's . . . existing ability to expand customer relationships and increase the penetration of new customer accounts," such that Cloudera would "use the initial sale as a foothold to increase revenue per customer by increasing the amount of data and number of use cases each customer runs through our platform."). CAC at ¶¶ 142, 146; ECF No. 173-4. These statements regarding the operational and economic opportunities of the merger are forward-looking on their face. *See* 15 U.S.C. § 78u–5(c)(1)(A)(i) (forward-looking statements include statements regarding "plans and objectives of management for future operations"); 15 U.S.C. § 78u5(i) (forward-looking statements include any statement regarding "future economic performance" and the assumptions underlying those); *see also In re Pivotal*, 2020 WL 4193384, at *15 (finding statements concerning future operations and economic opportunities forward-looking).

Moreover, each of these statements was accompanied by "meaningful cautionary statements" as required by the PSLRA Safe Harbor provision. *See In re Cutera*, 610 F.3d at 1112. The challenged statements were made in Cloudera's SEC filings and presentations to analysts, and those filings and presentations contained comprehensive language identifying the forward-looking

statements. *See* ECF No. 178-38, at 33 ("Merger Registration Statement"); ECF No. 178-23, at 2 ("Merger Presentation"); ECF No. 178-24, at 4 ("Merger Conference Call"). For example, the Merger Registration Statement contained the following warning:

> These [forward-looking] statements are based on management's current expectations and beliefs, and are subject to a number of factors and uncertainties that could cause actual results to differ materially from those described in the forward-looking statements. These forward-looking statements include statements about future financial and operating results; benefits of the transaction to customers, stockholders and employees; potential synergies; the ability of the combined company to drive growth and expand customer and partner relationships; statements of the plans, strategies and objectives of management for future operations, including the execution of integration and restructuring plans and the anticipated timing of filings and approvals related to the merger or the closing of the merger; statements regarding future economic conditions or performance; and other statements regarding the proposed transaction.

Merger Registration Statement at 33. Each filing or presentation cautioned that forward-looking statements were predictions based on current expectations and assumptions; that these expectations and assumptions involved risks and uncertainties; and referred investors to Cloudera's reports filed with the SEC. *See* Merger Registration Statement at 33–34; Merger Presentation at 2; and Merger Conference Call at 4.

The cautionary statements used by Cloudera Defendants are almost identical to language approved by the Ninth Circuit in instances in which forward-looking statements were immunized by the PSLRA Safe Harbor. *See, e.g., Intuitive Surgical*, 759 F.3d at 1059–60 (approving cautionary language in earnings call that warned that comments may contain forward-looking statements, that such statements may differ based on "certain risks and uncertainties," and referring investors to "the company's [SEC] filings"); *In re Cutera*, 610 F.3d at 1112 (approving cautionary language at beginning of quarterly earnings call that the conversation would contain forward-looking statements "concerning future financial performance and guidance," and that "Cutera's ability to continue increasing sales performance worldwide could cause variance in the results.") (internal quotation marks omitted). Cloudera Defendants' cautionary language is

Case No. 19-CV-03221-LHK
ORDER GRANTING MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
WITH LEAVE TO AMEND

therefore sufficient under the PSLRA Safe Harbor.

Plaintiffs argue that Cloudera Defendants' statements are not protected by the PSLRA Safe Harbor for two reasons. First, Plaintiffs argue that each statement mixes false or misleading statements with a forward-looking statement. Opp. at 18. Under Ninth Circuit law, the PSLRA Safe Harbor does not protect defendants "when they make a materially false or misleading statement about current or past facts, and combine that statement with a forward-looking statement." *In re Quality Sys., Inc. Sec. Lit.*, 865 F.3d 1130, 1142 (9th Cir. 2017). Thus, when a statement contains both a forward-looking statement and a false or misleading statement about current or past facts, only the forward-looking portion of the statement is protected by the Safe Harbor. *Id.*

Each of the four statements that the Court has identified as forward-looking is not a mixed statement of present facts and a forward-looking statement. Rather, each is solely a forward-looking statement regarding the opportunities presented by the merger of Cloudera and Hortonworks. *See* Statement 27 ("The combination of the two companies would result in "sales and growth on day one."); Statement 30 (The Merger would "increase cross-sell opportunities[.]"); Statement 31 (The Merger would "enlarge addressable market[.]"); and Statement 32 (The merger would "improve Cloudera's . . . existing ability to expand customer relationships and increase the penetration of new customer accounts," such that Cloudera would "use the initial sale as a foothold to increase revenue per customer by increasing the amount of data and number of use cases each customer runs through our platform."). ECF No. 173-4. Thus, Cloudera Defendants' statements are protected by the PLSRA Safe Harbor.

Second, Plaintiffs argue that Cloudera Defendants' statements are not protected by the Safe Harbor because Cloudera's risk disclosure warnings did not warn that Cloudera lacked a "viable cloud-native product." Opp. at 19. This argument lacks merit. None of the statements that the Court has found to be protected by the Safe Harbor reference Cloudera's cloud offerings or cloud products.

United States District Court
Northern District of California

Accordingly, the Court finds that Statements 27, 30, 31, and 32 are forward-looking statements accompanied by meaningful cautionary language. Therefore, the Court GRANTS Cloudera Defendants' motion to dismiss as to these statements because these statements are protected by the PSLRA Safe Harbor.

In summary, the Court finds that none of the allegedly false or misleading statements in Plaintiffs' complaint survive the instant motion to dismiss. Accordingly, the Court GRANTS Cloudera Defendants' Motion to Dismiss Plaintiffs' § 10(b) and Rule 10b-5 cause of action.

## B. Plaintiffs' Claims Under § 20(a) of the Exchange Act

Congress has established liability in § 20(a) for "[e]very person who, directly or indirectly, controls any person liable" for violations of the securities laws. 15 U.S.C. § 78t(a). To prove a prima facie case under § 20(a), a plaintiff must prove: (1) "a primary violation of federal securities law;" and (2) "that the defendant exercised actual power or control over the primary violator." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). Because Plaintiffs have failed to plead a primary securities law violation, Plaintiffs have also failed to plead a violation of § 20(a). *See In re Cutera*, 610 F.3d at 1113 n.6 (holding that § 20(a) claim was properly dismissed because § 10(b) claim had already been dismissed). Accordingly, Cloudera Defendants' motion to dismiss Plaintiffs' § 20(a) claim is GRANTED.

## C. Plaintiffs' Claims Under §§ 11 and 12(a)(2) of the Securities Act

Cloudera Defendants next argue that Plaintiffs have failed to state a claim under §§ 11 and 12(a)(2) of the Securities Act. Mot. at 19. Plaintiffs challenge 14 statements under §§ 11 and 12(a)(2) of the Securities Act that are in Cloudera's Merger Registration Statement or incorporated by reference into the Merger Registration Statement. *See* CAC at ¶¶ 199–210; ECF No. 173-5. Plaintiffs argue that each challenged statement was a materially false statement or omission when made. Op. at 24.

To state a claim under § 11 of the Securities Act, Plaintiffs must plausibly allege that a registration statement "contained an untrue statement of material fact" or "omitted to state a

34

material fact . . . necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a); *see also In re Pivotal*, 2020 WL 4193384, at *5 (same). To qualify as an untrue statement of material fact, a statement must be both false and material to investors. *See In re Rigel Pharm.*, 697 F.3d at 880 n.8. To qualify as an omission, it is not enough that the registration statement omitted material facts. *See id.* (citing *Matrixx Initiatives v. Siracusano*, 563 U.S. 27, 38 (2011)); *see also In re Pivotal*, 2020 WL 4193384, at *5 (explaining standard for § 11 claims). Rather, an omission "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists" to be actionable. *Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

Moreover, the same legal standard applies for pleading a violation of § 12(a)(2). *See* 15 U.S.C. § 77l (imposing liability where a prospectus "includes an untrue statement of a material fact" or "omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading"); *see also In re Pivotal*, 2020 WL 4193384, at *5 (same).

Cloudera Defendants move to dismiss Plaintiffs' § 11 and § 12(a)(2) claims on three grounds. Mot. at 19. First, Cloudera Defendants argue that Plaintiffs have failed to adequately plead falsity for the challenged statements. Second, Cloudera Defendants argue that many of the statements are either forwarding-looking statements; vague statements of corporate optimism; or both. Finally, Cloudera Defendants argue that SEC Regulation S-K did not impose any additional duties to disclose in the Merger Registration Statement. Intel joins in these arguments. Intel Mot. at 4.

Furthermore, Cloudera Defendants argue that the heightened pleading standards of Rule 9(b) apply to Plaintiffs' Securities Act claims because Plaintiffs make only a nominal effort to disclaim allegations of fraud with respect to their § 11 claim. Mot. at 8. Claims arising under the Securities Act are subject to Federal Rule of Civil Procedure 8(a)'s ordinary notice pleading requirements unless the allegations "sound in fraud." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d

35

1156, 1161 (9th Cir. 2009) (citing *In re Daou, Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005)). Where "a complaint employs the exact same factual allegations to allege violations of section 11 as it uses to allege fraudulent conduct under section 10(b) of the Exchange Act, we can assume that it sounds in fraud." *Id.*

Here, the CAC states that "Plaintiffs assert only strict liability and negligence claims and expressly disclaim any claim of fraud or intentional misconduct. This Count does not sound in fraud." CAC at ¶ 226. However, as Cloudera Defendants rightly argue, Plaintiffs' Securities Act and Exchange Act allegations are almost identical. Accordingly, following the Ninth Circuit's decision in *Rubke*, the Court finds that the heightened pleading standards of Rule 9(b) apply to Plaintiffs' Securities Act claims. *See Rubke*, 551 F.3d at 1161; *see also Norfolk*, 2016 WL 7475555, at *2 (finding that Rule 9(b)'s pleading standard applies to Securities Act claims because plaintiffs "appear to rely on the same omissions and misstatements as they do for the Exchange Act claims.").

Under the heightened pleading standards of Rule 9(b), Plaintiffs must "set forth what is false or misleading about a statement, and why it is false." *Yourish*, 191 F.3d at 993 (internal quotation marks and citation omitted). This requirement is "satisfied by pointing to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants." *Id.* (internal quotation marks omitted).

The Court now turns to Plaintiffs' challenged statements under § 11 and § 12(a)(2) of the Securities Act.

### 1. Plaintiffs have Failed to Adequately Plead Falsity

Plaintiffs allege that Cloudera Defendants' Merger Registration Statement contained numerous affirmative misrepresentations. *See, e.g.*, CAC at ¶¶ 199–210 ; ECF No. 173-5 (Statements 42–55). As a result, Plaintiffs argue that each of the 14 statements from the Merger Registration Statement that Plaintiffs challenge were false or misleading when made. Opp. at 24. Cloudera Defendants argue that Plaintiffs have failed to adequately allege falsity for each of the 14

challenged statements. Mot. at 19. The Court agrees with Cloudera Defendants as to two categories of statements.

### a. Cloudera's Product Offerings

Specifically, Plaintiffs allege that Statements 42, 43, 44, 45, 46, 47, 48, and 53 were false or misleading when made because Cloudera's products were not "optimized for the cloud"; Cloudera "had no legitimate cloud offering"; and Cloudera's "platforms were technologically obsolete." *See* CAC at ¶ 200. Plaintiffs further allege that Cloudera lacked a product that was "optimized for the cloud" until the company released CDP in September of 2019. *Id.*

Statement 42 states that Cloudera's product offerings' "original architecture was designed for the cloud" and "run[] natively on public cloud infrastructure." *Id.* at ¶ 199. The Court has already explained that Plaintiffs have failed to adequately allege falsity with respect to Cloudera Defendants' statements touting Cloudera's cloud-native technology and architecture. Plaintiffs have therefore failed to allege falsity with respect to Statement 42 for the same reason.

Statement 53 states that Cloudera characterized "Altus" as a "cloud" offering and asserted the "complementary product[]" would create "[p]owerful [s]ynergies" for "[r]evenue.". CAC at ¶ 205. Plaintiffs allege that this statement was false because Altus was not a "viable cloud product." *Id.* The CAC acknowledges that Altus was a cloud product and does not explain specifically why it was not viable. CAC at ¶ 205. Thus, Plaintiffs have failed to adequately plead falsity with respect to Statement 53.

Statements 43, 44, 45, 46, 47, and 48 all describe the capabilities or benefits of Cloudera's cloud products. *See* Statement 43 (The Company's product offerings are "[l]eading cloud innovation for big data."), Statement 44 (Cloudera could "leverage the latest advances in infrastructure including the public cloud for 'big data' applications."), Statement 45 (Cloudera's offerings provided "[c]loud and on-premises deployment at scale and across hybrid cloud environments."), Statement 46 (Cloudera's offerings "allow[ed] enterprises to manage both long-lived and transient workloads across environments, mixing on-premises and public cloud

Case No. 19-CV-03221-LHK
ORDER GRANTING MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
WITH LEAVE TO AMEND

infrastructure, including all major public cloud vendors – Amazon Web Services, Microsoft Azure and Google Cloud Platform."), Statement 47 (Cloudera's offerings permitted customers to "deploy, configure and monitor their clusters and workloads at scale from a centralized interface across any mix of public cloud or on-premises environments."), and Statement 48 (Cloudera's product "Altus is a cloud service that . . . enable[s] customers to address a new set of elastic and transient workloads that would otherwise be impractical to run in the datacenter," highlighting its purportedly "ongoing performance in the areas of cloud," and ability to provide" [c]loud . . . deployment at scale.").

Plaintiffs allege that each of these statements was false or materially misleading when made because Cloudera's products were not "optimized for the cloud"; Cloudera "had no legitimate cloud offering"; and Cloudera's "platforms were technologically obsolete." *See* CAC at ¶ 200. However, Plaintiffs fail to specify what it means for products to be "optimized for the cloud" or a "legitimate cloud offering." Plaintiffs do allege that "elasticity, security and integrated support for streams and containerized applications were not competently built into Altus," which according to Plaintiffs "render[ed] it almost immediately obsolete." *Id.* at ¶ 202.

However, Plaintiffs allege no contemporaneous facts to establish these conclusory allegations. In fact. the only specific factual assertion that Plaintiffs provide to establish that Altus was not a "viable cloud product" at the time of the Merger Registration Statement is that Cloudera was forced to develop CDP in order to replace Altus. *Id.* at ¶ 205. The fact that Cloudera later developed a new cloud product does not demonstrate that Altus itself was not a viable cloud product at the time of the Merger Registration Statement. "[W]hile the court assumes that the facts in a complaint are true, it is not required to indulge unwarranted inferences in order to save a complaint from dismissal." *Metzler*, 540 F.3d at 1064–65.

Moreover, as the Court has already explained, *infra* Section III(A)(1)(a), to the extent Plaintiffs fail to adequately allege that Cloudera's cloud products lacked a specific technology or capability that rendered Cloudera Defendants' statements false when made, those statements are

38

likely mere corporate puffery.

Accordingly, Plaintiffs have failed to adequately plead falsity with respect to Statements 43, 44, 45, 46, 47, and 48.

Finally, Plaintiffs have also failed to adequately plead falsity as to Statement 49, which states "[a]fter an initial purchase of our platform, we work with our customers to identify new use cases that can be developed on or moved to our platform, ultimately increasing the amount of data managed on our platform as well as the number and size of our platform deployments." CAC at ¶ 203; ECF No. 173-5, at 4. Plaintiffs allege that this statement was false when made because Cloudera's customer base was not expanding; Cloudera's technology was obsolete, and Cloudera was experiencing significant customer churn. *Id.* at ¶ 204.

However, even if Plaintiffs had adequately pled each of these allegations, they would not render Cloudera Defendants' statement false. Rather, the statement only explains what Cloudera does when a new customer purchases Cloudera's product. As such, "[t]here is no untruth or misleading omission here" and Plaintiffs have therefore failed to adequately plead falsity with respect to Statement 49. *In re Pivotal*, 2020 WL 4193384, at *6 (dismissing claim where allegations did not establish falsity of challenged statement).

Accordingly, Plaintiffs have failed to adequately plead falsity with respect to Statements 42, 43, 44, 45, 46, 47, 48, 49 and 53. *Id.* (dismissing claims under § 11 and § 12(a)(2) for failure to provide sufficient factual allegations to plausibly allege falsity).

### b. Cloudera's Risk Disclosures

Plaintiffs also challenge two statements within the Merger Registration Statement from the "Risk Factors" section. CAC at ¶ 206; ECF No. 173-5. Plaintiffs challenge the use of words like "if," "could," and "may" in the listed risk factors. Plaintiffs allege that the use of these terms was materially false and misleading because the risks warned of had already materialized at the time of the merger. *Id.*

In the Ninth Circuit, risk factors in a registration statement are not actionable without

39

sufficient factual allegations indicating that the risks have already "come to fruition" at the time of the statement. *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1181 (9th Cir. 2009).

Here, Plaintiffs allege that the "Risk Factors" section of the Merger Registration Statement stated that "'if' a 'risk' occurred it 'could' or 'may' possibly negatively impact the Company." CAC at ¶ 206; ECF No. 173-5 (Statement 54). Plaintiffs also allege that the Merger Registration Statement's "'Risk Factors' meagerly suggested that the Company 'could lose market share to our competitors, which could adversely affect our business, financial condition and results of operations.'" *Id.* at ¶ 208; ECF No. 173-5 (Statement 55). Plaintiffs contend that "[t]hese statements were materially false and misleading because the risks warned of had, in fact, already materialized at the time of the Merger." *Id.* at ¶ 206. Specifically, Plaintiffs allege that the "Risk Factors" failed to disclose that Cloudera lacked a viable cloud product and that Cloudera's Hadoop-focused platform and Altus offering had technical and commercial shortcomings in comparison to competitors' products. *Id.* at ¶ 209.

First, Plaintiffs challenge Cloudera Defendants' statement that Cloudera "could lose market share to our competitors, which could adversely affect our business, financial condition and results of operations." CAC at ¶ 208. Plaintiffs allege that this statement had already come to pass because Cloudera's "market share in cloud was virtually nonexistent at the time of the Merger." *Id.* However, Plaintiffs' allegation lacks merit. Cloudera Defendants did not claim to have a particular share of the market. Cloudera Defendants simply acknowledged in the "Risk Factors" section of the Merger Registration Statement that they could lose market share to competitors going forward. Plaintiffs' allegation regarding Cloudera's share of the market at the time of the merger does not demonstrate that Cloudera Defendants' warning of potential future loss of market share had already "come to fruition" at the time of the merger. *See Siracusano*, 585 F.3d at 1181.

Second, the remainder of Plaintiffs' allegations rely on the same inadequate allegations regarding Cloudera's lack of a viable cloud product, which the Court has already found

40

insufficient. Without specific factual allegations regarding the alleged viability of Cloudera's cloud product at the time of the merger, the Court cannot determine whether Cloudera Defendants' risk factors were materially false or misleading when made. *See In re Pivotal*, 2020 WL 4193384, at *7 (dismissing claim based on risk factors because complaint provided only conclusory assertions that they had come to fruition).

Moreover, Plaintiffs contend that the primary evidence of Cloudera's lack of a viable cloud product was Cloudera's announcement on March 13, 2019 that Cloudera would focus its cloud product sales on its new CDP product. CAC at ¶ 210. Plaintiffs allege that this announcement demonstrated that Cloudera lacked a viable cloud product at the time of the merger in October of 2018. *Id.* However, the fact that Cloudera launched a new cloud product in March of 2019 and chose to focus on that product going forward is inadequate to establish that Cloudera lacked a viable cloud product at the time of the Merger Registration Statement.

As such, Plaintiffs have failed to adequately allege that Statements 54 and 55 were false or materially misleading when made.

Plaintiffs have therefore failed to adequately plead factual allegations to create a reasonable inference that Cloudera Defendants' Statements 42–49 and 53–55 were false or misleading when made in violation of §§ 11 and 12(a)(2) of the Securities Act. Therefore, the Court GRANTS Cloudera Defendants and Intel's motions to dismiss as to these statements.

### 2. Forward-Looking Statements

Statements 50, 51, and 52 are the exact same statements that Plaintiffs challenged as Statements 30, 31, and 32 under the Exchange Act. The Court has already found that each of these three statements is a forward-looking statement accompanied by meaningful cautionary language. As such, each statement is protected by the PSLRA Safe Harbor provision and not actionable. *See* 15 U.S.C. § 78u–5(c)(1)(A)(i); *see also No. 84 Employer–Teamster Joint Council Pension Trust Fund*, 320 F.3d at 936 (explaining which statements are protected by PSLRA Safe Harbor). Therefore, the Court GRANTS Cloudera Defendants and Intel's motions to dismiss as to

41

these statements.

### 3. Disclosure Obligations of Regulation S-K

Under SEC Regulation S-K Item 303, issuers must "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(a)(3)(ii). A claim under Item 303 must show that the trend, demand, commitment, event, or uncertainty "is both [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operation." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

The only allegation in support of Plaintiffs' Item 303 claim in the CAC states that "the [Securities Act] Defendants' neglect in not disclosing the adverse information detailed in the Merger Registration Statement in ¶¶ 199–210, infra, also violated Item 303 of Regulation S-K." This allegation is vague, and the Court is therefore required to guess what specific "trends or uncertainties" Plaintiffs intended to allege were wrongfully omitted from the Merger Registration Statement. Plaintiffs' opposition brief states only that "Plaintiffs' Item 303 allegation should also be sustained." Opp. at 25 n.17. Cloudera Defendants argue that Plaintiffs have failed to meet either prong of the requirements to state a claim under Item 303. Mot. at 20.

Construing the CAC in the light most favorable to Plaintiffs, the Court construes the CAC to allege that Cloudera Defendants failed to disclose that Cloudera lacked a viable cloud product and that Cloudera's customers were not renewing their contracts with Cloudera because Cloudera lacked a viable cloud product. *See* CAC at ¶¶ 199–210. However, Plaintiffs have failed to adequately plead that either trend or uncertainty was "known to management" at the time of the merger with Hortonworks. Accordingly, Plaintiffs have failed to state a claim under §§ 11 and 12(a)(2) of the Securities Act against Cloudera Defendants for failure to provide the requisite Item 303 disclosures in the Merger Registration Statement.

For the foregoing reasons, the Court GRANTS Cloudera Defendants and Intel's motions to

42

dismiss as to Plaintiffs' §§ 11 and 12(a)(2) claims.

**D. Plaintiffs' Claim under § 15 of the Securities Act**

To state a claim against a control person under § 15 of the Securities Act, Plaintiffs must plausibly allege (1) an underlying violation of §§ 11 or 12, and (2) control. *See* 15 U.S.C. § 77o; *see also In re Rigel*, 697 F.3d at 886 (explaining the elements of a § 15 claim). Plaintiffs have not plausibly alleged an underlying violation of §§ 11 or 12. Therefore, Plaintiffs' § 15 claim is DISMISSED.

## IV. CONCLUSION

For the foregoing reasons, Cloudera Defendants and Intel's motions to dismiss Plaintiffs' complaint in its entirety are GRANTED. Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger*, 512 F.3d at 532.

Should Plaintiffs choose to file an amended complaint, they must do so within 30 days of this Order. Failure to do so, or failure to cure the deficiencies identified in this Order and in Defendants' motions to dismiss, will result in dismissal of Plaintiffs' deficient claims with prejudice. Plaintiffs may not add new claims or parties without a stipulation or leave of the Court. If Plaintiffs choose to file an amended complaint, they must also file a redlined copy comparing the second consolidated amended class action complaint with the consolidated amended class action complaint. Finally, any amended complaint must comply with this Court's Securities Class Action Standing Order, effective September 23, 2019.

**IT IS SO ORDERED.**

Dated: May 25, 2021

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

43